ZILKIN *vs.* CARHART.

*In the matter of the Estate of* NICHOLAS ZILKIN, *deceased.*

The intestate having owned a lease for years without covenant of renewal, but with a stipulation that the right of the lessee to take away the building on the premises, should not be impaired, and the administratrix having taken a renewal in her own name,—*Held,* that the new lease enured to the benefit of the estate, and that the administratrix was bound to account to the next of kin for its value, and for the rents which had accrued, less the current charges, repairs, and ground rent.

There is always a beneficial interest connected with a tenancy, as an inducement towards a renewal, which in equity is regarded as valuable, and a trustee cannot avail himself of his position and use the good-will, for a renewal in his own right, in exclusion of the parties for whom he is trustee.

Assets cannot be taken by the administrator at the inventory price, if it be shown that they are of greater value than stated by the appraisers in the inventory.

F. W. BURKE, *for Claimant.*

F. A. TALLMADGE, *for Administratrix.*

THE SURROGATE.—The intestate on the 1st of May, 1840, became the lessee of certain premises in this city from William Cairns, junior, and Ann Eliza, his wife, for the term of seven years, provided the said Ann Eliza should live so long, at the yearly rent of one hundred and eighty dollars. There was a covenant in the lease for quiet surrender of the premises at the expiration of the term, and that the lease should not " take away any of the legal rights" of the lessee " to any building or buildings now erected or hereafter to be erected upon the premises." Zilkin, the lessee, died in February, 1846, and his widow took out letters of administration upon his estate. The lease was appraised and included in the inventory, filed in June, 1846. On the first of May, 1847, the

administratrix renewed the lease in her own name and not in her representative capacity, for a further term of seven years at the same rent—with a similar provision to the one contained in the first lease, in respect to the buildings ; and on the first day of March, 1854, she procured a further renewal for seven years in her own name, upon the same terms, except that the rent was increased to the sum of two hundred and sixty-seven dollars per annum. On being called to account by one of the children who had lately attained full age, the rents of the premises were included in the accounts of the administratrix as filed, and she charged herself with the value of the lease as appraised in the inventory, made in 1846. On being further advised, she now claims that the renewals of the lease did not enure to the benefit of the estate, and that she had a right to take and hold the new leases in her own individual character, and as her individual property. This proposition is based upon the fact that there was no right of renewal reserved in the first demise, and the landlord had the option of refusing to renew, and giving a lease to any other applicant. The fact is undeniable, but the conclusion of law sought to be drawn from it is altogether untenable. Here was a leasehold estate about to expire, and the administratrix possessed certain valuable interests in the buildings on the premises, which belonged to her only in her representative character. The lease was determinable on the life of one of the lessors, who possessed only a life estate in the premises. It was for the interest then of both parties that the lease should be renewed in favor of the representatives of the deceased lessee, otherwise the value of the buildings might on the one side be greatly depreciated by removal, and on the other, the risk encountered of making improvements upon lands held only for life. There can be no doubt that these considerations would be an important element in determining the renewal in favor of the intestate's estate, and that through the medium of advantages possessed by the administratrix as the legal disposer of the buildings, she would be enabled to secure for herself terms that could

not readily be obtained by a stranger.  Independently, however, of the buildings, there is always a beneficial interest connected with a tenancy, as an inducement towards a renewal, which in equity is regarded as valuable ; and a trustee cannot avail himself of his position and use this good-will, for a renewal in his own individual right and behalf, to the exclusion of the parties for whom he is trustee.  This is not a new proposition.  It was inculcated so long ago as the case of *Holt vs. Holt*, *Ambler*, 719, 22 *Charles* II. ; and has been repeatedly acted upon since.  In *Rawe vs. Chichester*, *ibid*, there was a bequest to the testator's widow of leasehold estate for life, and she having obtained an additional term, it was decided that the renewal should not be for her own benefit, but should go to the uses of the will; the Lord Chancellor saying, " it may be laid down as a rule, that whoever has a lease has an interest in the renewal, and it is often the subject of settlements and of the jurisdiction of this court.  Though the lessors are not bound to renew, yet when done, it is a continuation of the old lease.  If trustees, mortgagees and persons interested obtain renewal, the new lease is always subject to the trusts and limitations of the old lease. Many cases have been determined in support of this doctrine."  In *Doe vs. Porter*, 3 *Term. R.* 13, it was held that a tenancy from year to year was an interest transmissible to the representatives; and Lord Eldon in *James vs. Dean*, 15 *Vesey*, 236, commenting upon that point, says, " the consequence is necessary that the beneficial interest attaching upon the legal interest, must be held by the representatives for those persons to whom the beneficial interest is given," and if the representative " had acquired a lease through the opportunity afforded him during that short period, she would be a trustee."  (See 11 *Vesey*, 383; *Fosbrooke vs. Balguy*, 1 *M. & K.* 226.)  In *Randall vs. Russell*, 3 *Meriv. R.* 190, Sir William Grant decided, that a tenant for life renewing a lease held by the testator from year to year, took the renewed lease subject to the trusts of the will ; and in *Fitzroy vs. Howard*, 3 *Russ. Ch. R.* 225, where the administrator had procured re-

newals of leases, the Lord Chancellor determined that he held the renewed leases as a trustee. In all these cases there was no covenant for renewal, and the lessor had a legal right to refuse any further letting. There is nothing, therefore, in the matter now under consideration to take it out of the general rule, and I must decide, that the administratrix took the renewals effected by her after the intestate's death, for the benefit of all parties interested in the estate. She must account for the rents of the premises under the renewals, and the next of kin at whose instance this proceeding was instituted, may insist upon a sale of the property for the purpose of obtaining his proportion of the proceeds ; or his share, if the parties agree, may be adjusted on a valuation.